# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

IN THE MATTER OF:                     **Case No. 1:09-bk-12922**

**JOHN BENJAMIN HIAT †**               **JUDGE J VINCENT AUG JR.**
**KIMBERLY IRENE HIATT**               **CHAPTER 7**

DEBTORS

## ADVERSARY PROCEEDING
## MOTION OBJECTING TO THE DISCHARGE ABILITY OF DEBT
## DUE TO FRAUD COMMITTED BY DEBTORS

In accordance with 11 U.S.C. 523 (a) (2) (A) 5, Plaintiff/Creditor, Kim R. Knoppe, respectfully requests the Court to NOT discharge the debt owed to Knoppe on the grounds that the debtors John B. Hiatt and Kimberly I. Hiatt committed fraud against Knoppe.

Respectfully Submitted,

_____

Kim R. Knoppe, Creditor/Plaintiff Pro Se
634 Bear Run Lane
Lewis Center, Ohio 43035
614-433-9100, x 101

## MEMORANDUM IN SUPPORT

1. Attached as **Exhibit 1** is Knoppe's Answer and Complaint Against Third Parties filed on September 18, 2007 with the Montgomery Common Pleas Court in response to the Complaint For Foreclosure filed by Deutsche Bank National Trust Company on August 13, 2007 against John and Kimberly Hiatt's Mortgage given on Laws Mobile Home Park. This is the subject property in which the Hiatts committed fraud against Debtor Knoppe.

2. Knoppe wishes to incorporate his Answer to Deutsche Bank's Complaint In Foreclosure and his Complaint Against Third Parties, including John and Kimberly Hiatt for fraud, as shown in **Exhibit 1,** as if wholly rewritten into this Motion Objecting To The Discharge Ability of Hiatts' Debt to Knoppe.

3. Plaintiff/Creditor, Kim R. Knoppe, lent the Hiatts $187,000 on November 22, 2006 for the purpose of purchasing Laws Mobile Home Park located at 2300 Valley Pike, Dayton, Ohio 45404, ("Laws"). A copy of the Promissory Note is attached as **Exhibit 2.**

4. Debtors gave Knoppe a Mortgage on the property in the amount of $187,000 dated the same day as the Note, November 22, 2009. See a copy of the Mortgage attached as **Exhibit 3.**

5. Knoppe already had an existing mortgage on Laws with the previous owner, JGR Properties, Inc. in the amount of $100,000. See a copy of the mortgage attached as **Exhibit B.**

6. Knoppe was anticipating that the existing $100,000 Mortgage with the previous owner would be paid off at the time the Hiatts purchased the mobile home park.

7. The Hiatts purchased Laws Mobile Home on 9-1-06, over 2 months prior to borrowing the $187,000 from Knoppe. See copy of the HUD closing statement attached a **Exhibit 4** which Knoppe obtained through discovery requests to Deutsche Bank.

8. Knoppe was unaware that the Laws purchase by the Hiatts had already taken place.

9. The Hiatts went ahead and closed on Knoppe's $187,000 loan on 11-22-06. Hiatts kept from Knoppe the fact that Laws was already owned by Hiatts. See a copy of the closing statement attached as **Exhibit 5.**

10. Knoppe was never paid for the existing $100,000 Mortgage. Instead, a forged payoff letter dated 9-1-06 was executed and included in the 9-1-06 closing file. See a copy of the forged payoff letter attached as **Exhibit 6.** This forgery enabled Hiatt to who was in cahoots with the seller, James Geyer, to save $100,000 in their sale/refinance scheme. A copy of this forged payoff letter was obtained by Knoppe through discovery requests to Deutsche Bank.

11. John Hiatt is a mortgage broker by profession and does business as Premier Mortgage Funding Inc. and Premier Mortgage Funding of Ohio and Premier Service Mortgage. His company participated in the 9-1-06 Hiatt purchase of Laws Mobile Home Park and the Knoppe loan. See page 2, line 801 of the HUD Closing Statement attached as **Exhibit 5** and Fax Transmittal from his company Premier Mortgage Funding, Inc. attached as **Exhibit 13.**

12. Not one dollar was ever paid to Knoppe on his $187,000 loan to Hiatts.

13. As a result of the Hiatt default, Knoppe obtained a Judgment in the amount of $212,325.00 on February 22, 2007. A copy of the Judgment is attached as **Exhibit 7.**

14. Evidence will show that the Hiatts were merely "straw" buyers for Laws. The previous owner maintained control and continued to collected rents. The sale was merely a refinancing fraud allowing Hiatts and James Geyer to borrow far more than Laws was worth with the intention of never paying the debt service. In total, Hiatts borrowed $1,762,000. (Deutsche Bank's loan of $1,575,000 and Knoppe's loan of $187,000). See copy of Settlement Statements attached hereto as **Exhibits 4 & 5.**

15. Evidence will show that in March, 2007, the local property managers who had been working at Laws for years were unaware that Laws had been sold to Hiatts six months earlier.

16. Hiatts presented themselves to Knoppe as professional real estate investors who operate an ongoing business and have experience in speculative real estate modeling and investing. See attached **Exhibit 8.**

17. Based on Laws rental income and normal operating expense, Hiatts knew they never had the financial means to make the financial obligations they committed to. They made money on the financing and left the mobile home park to ruin.

18. Knoppe learned through post closing conversations with John Hiatt that he never intended to receive rents or to ever take control of Laws and admitted that James Geyer maintained control. Knoppe further learned from Hiatt that Geyer was responsible for making payments on the new debt obligations created by Hiatt.

19. Rent ledgers for Laws were inflated and expenses were understated so to make Laws appear more valuable than it was. See the April, 2006 rent ledgers presented to Knoppe by Hiatt attached as **Exhibit 9**. This rent roll shows 144 rent paying trailers. In reality, Laws only had 46 paying trailers.

20. Window curtains, shower curtains, and bed sheets were placed in many empty trailers to make the mobile home park look more occupied to Knoppe to coincide with the inflated rent rolls to fraudulently entice him to lend. See copy of a hand written letter Knoppe received from one of the past employees of Hiatt and Geyer attached hereto as **Exhibit 10**.

21. Unpaid water and tax bills which Hiatts were aware of became a lien on the property but were not disclosed to Knoppe. And the Hiatts signed an Affidavit on

11-26-06 stating that they were not aware of any such liens. See a copy of the affidavit attached hereto as **Exhibit 11** and a copy of the delinquent tax bill for 2006 attached as **Exhibit 12.**

**WHEREFORE**, for all the reasons stated above, and in accordance with 11 U.S.C. 523 (a) (2) (A) 5, Debtor Knoppe prays the Court grants his Motion Objecting To The Discharge Ability of the Hiatt debt to Knoppe.

Respectfully submitted,

Kim R. Knoppe, Creditor Pro Se
634 Bear Run Lane
Lewis Center, Ohio 43035
614-433-9100, x107

CERTIFICATE OF SERVICE

Creditor, Kim R. Knoppe, hereby certifies that a copy of the Motion has been sent regular U. S. Mail this ___6___ day of July, 2009 to the following addresses:

Eric W. Goering
220 West Third Street
Third Floor
Cincinnati, OH 45202

Norman L. Slutsky
9403 Kenwood Rd.
Suite D 100
Cincinnati, OH 45242

U.S. Bankruptcy Court
Clerk's Office
221 East Fourth Street, Suite 800
Cincinnati, OH 45202-4133

Kim R. Knoppe

FILED
COURT OF COMMON PLEAS
2007 SEP 18 PM 3: 56
GREGORY A. BRUSH
CLERK OF COURTS
MONTGOMERY CO. OHIO

COURT OF COMMON PLEAS
MONTGOMERY COUNTY, OHIO

Deutche Bank National Trust Company

Plaintiff                                   Case No. 07-6630

Vs.                                         Judge _____

John Hiatt, et al
                                            Permanent Parcel No. 1391-7-1-14
Defendants

CO-DEFENDANT KIM KNOPPE'S ANSWER TO
PLAINTIFF'S COMPLAINT IN FORECLOSURE AND
KIM KNOPPE'S COMPLAINT AGAINST THIRD PARTIES
--------------------------------------------------------------------------------

Now comes co-defendant, Kim Knoppe, with his Answer to plaintiff's Complaint In
Foreclosure.

1. Defendant denies allegations in counts 1 through 6 for want of information.

2. Defendant, Kim Knoppe is the current Title Holder of the subject property by
   virtue of a General Warranty Deed from John B. Hiatt and Kimberly I. Hiatt
   recorded February 21, 2007 in Montgomery County, record number DEED-07-
   014528 0002. A copy is attached hereto as Exhibit __A__.

3. Defendant received this General Warranty Deed, and an Assignment of Rents and
   All Property in partial satisfaction of a debt that John and Kimberly Hiatt had with
   defendant, Kim Knoppe.

4. Defendant, Kim Knoppe asserts that he is the first Mortgage holder. Defendant is
   a holder of a first mortgage in the amount of $100,000 granted by J.G. R.
   Properties, Inc., a previous owner, recorded April 28, 2006 with the Montgomery
   County Recorders Office, record number MORT-06-037853. Please see a copy of
   this mortgage attached hereto as Exhibit __β__. This mortgage was given as cross
   collateral on loans to James Geyer and JGR Properties, Inc. prior to John Hiatt's
   ownership. Those monies lent to James Geyer and JGR Properties have not been
   paid and are delinquent. This mortgage is first in time, therefore, co-defendant,
   Kim Knoppe's mortgage is first in line, making Kim Knoppe the primary lien
   holder.



5. Evidence will further show that Litton Loan Servicing, the agent for plaintiff, failed to return numerous phone messages from co-defendant, and that plaintiff, Deutch Bank National Trust Company, also failed to return calls to defendant.

6. Evidence will show that previous owners Hiatt and JGR Properties refused to provide Kim Knoppe, co-defendant, the name and address of where to send the mortgage payments after such requests were made by phone and letter.

7. Under Ohio law the owner and first mortgage holder is entitled to collect rents and manage the property.

8. Defendant, Kim Knoppe, has 27 years of property management experience and currently manages over 80 properties.

9. Defendant further states and evidence will show that that the property is being well managed, and maintained, and defendant has made improvements to the property.

10. That a forced management change by the Court at this time would cause lost rents and an exodus of tenants who would fear the mobile home park is closing for redevelopment purposes.

CROSS CLAIM

1. Defendant/Cross Claimant is a holder of a first mortgage in the amount of $100,000 granted by J.G. R. Properties, Inc., a previous owner, recorded April 28, 2006 with the Montgomery County Recorders Office, record number MORT-06-037853. Please see a copy of this mortgage attached hereto as Exhibit _B_ . This mortgage is first in time and was never paid off. Therefore, co-defendant's mortgage is first in line, making Kim Knoppe the primary lien holder. The conditions of defeasance contained therein have been broken, and defendant is entitled to collect on this Mortgage in accordance to Ohio law.

2. Defendant/Cross Claimant has an interest in the property as a holder of one (1) certificate of Judgment against the primary defendants John and Kimberly Hiatt, a copy of which is attached hereto as Exhibit _C_ . Defendant/Cross Claimant has declared the debt evidenced by said Certificate of Judgment past due, and there is due thereon from the defendants John and Kim Hiatt a judgment for a total of $226,572.67 together with interest at the rate of 24% per annum from September 1, 2007.

   1a. The Certificate of Judgment was filed for record on March 13, 2007, recorded as Case No. 2007-CJ-156995 in Butler County.

Ex 1-1

## KIM KNOPPE'S COMPLAINT AGAINST THIRD PARTIE

1. Kim Knoppe, co-defendant and Cross Claimant in Complaint For Foreclosure and Plaintiff in this Complaint Against Third Parties, names the following five individuals and companies as defendants in his Complaint:
    1a. John Hiatt
    1b. Kimberly Hiatt
    1c. James Geyer
    1d. JGR Properties, Inc.
    1e. Robert Stoetzel
    1f. Premier Service Mortgage Funding of Ohio, Inc.

### COUNT ONE

1. Kim Knoppe lent defendants John and Kimberly Hiatt certain monies in which the subject property, 2300 Valley Road, Riverside, Ohio, 45424, commonly known as Laws Mobile Home Park was used as collateral.

2. Kim Knoppe lent defendants James Geyer and JGR Properties, Inc. certain monies in which the property at 4001 Kings Highway, Dayton, Ohio, another mobile home park, and 16 acres on Todd Road & Rt. 27 in Oxford, Ohio that was used as collateral.

3. Further, Mortgage Broker Robert Stoetzel brokered the loan deals. John Hiatt is owner of Premier Services Mortgage Funding of Ohio, Inc. and Robert Stoetzel works for/with Mr. Hiatt as Senior Mortgage Broker for Premier Service Mortgage Funding of Ohio, Inc.

4. John Hiatt was also the purchaser of the two mobile home parks in addition to being the mortgage broker.

5. John and Kimberly Hiatt, James R. Geyer, and JGR Properties, Inc., Robert Stoetzel, and Premier Services Mortgage Funding of Ohio Inc. knowingly and willingly conspired and agreed together and with each other to commit offenses against Kim Knoppe, Lender, to wit, knowingly executing or attempting to execute a scheme to defraud Kim Knoppe, with the intent to obtain money, funds, credit, by means of false and fraudulent pretenses and representations in violation of Ohio and Federal Law.

6. Evidence will show that all five defendants fraudulently enticed the Lender, Kim Knoppe, to make loans by exaggerating the income and magnitude of the properties at 2300 Valley St. and 4001 Kings Highway, and Todd Road by promising and guaranteeing short payback periods that the defendants knew would or could not occur.

Ex 1-2

7. All the defendants knew or should have known that they were grossly misrepresenting the financial facts for these properties in a direct attempt to defraud and deceive the Lenders and to borrow as much money as they could and far more money than the property could financially support.

8. Evidence will further show that the loan applications and personal financial statements of John and Kimberly Hiatt and James Geyer and JGR Properties were false and exaggerated and that John and Kimberly Hiatt, James R. Geyer, and JGR Properties, Inc., Robert Stoetzel, and Premier Services Mortgage Funding of Ohio Inc. knowingly and willingly conspired and agreed together and with each other to present false and or exaggerated applications and personal financial statements and in doing so committed offenses against Kim Knoppe, Lender, to wit, knowingly executing or attempting to execute a scheme to defraud Kim Knoppe, with the intent to obtain money, funds, credit, by means of false and fraudulent pretenses and representations in violation of Ohio and Federal Law.

9. Evidence will show that the sale of 2300 Valley Street and 4001 Kings Highway from JGR Properties to John Hiatt was nothing more than a financing scheme to pull out a lot of money and bilk the mortgage lenders out of hundreds of thousands of dollars.

10. Evidence will further show that JGR Properties continued to collect rents, take phone calls from tenants, expedite repairs and managed every aspect of both mobile home parks even though he had appeared to have sold it to John Hiatt.

11. Tenants and local long time managers of the mobile home parks never knew that the property had sold. Tenants continued to make payments to JGR Properties.

12. Local employees and managers continued to report to James Geyer of JGR Properties.

13. John Hiatt owned the mortgage company that put this deal together and was also the straw buyer for the two mobile home parks.

14. Evidence will show that Robert Stoetzel, John Hiatt, and Premiere Services Mortgage Funding of Ohio, Inc. not only brokered these loans but participated and contributed to the exaggerations and that their conduct was unprofessional, fraudulent and negligent.

15. Evidence will show that previous owners John Hiatt and James Geyer/JGR Properties, Inc. refused to provide Kim Knoppe, Lender, with contact information for the other lender that they were suppose to be making their mortgage payments to.

16. Evidence will further show that the defendants did not want Kim Knoppe to contact or converse with the other lenders for fear that their scheme would be exposed and communicated.

17. Evidence will show that the mobile home park(s) were doomed from the day of the sale to Hiatt because the revenue was insufficient to service the entire debt load and other normal operating expenses.

18. Funds obtained from this illegal flip were used to purchase other mobile home parks where the same refinancing scheme could be concocted again.

## COUNT TWO

1. Robert Stoetzel, who worked for/with John Hiatt and Premiere Services Mortgage Funding of Ohio, Inc. funneled monies from Geyer through accounts Stoetzel controlled. Evidence will show that James Geyer/JGR Properties, Inc. gave certain monies to Robert Stoetzel who commingled these funds with personal funds and with shell companies that Stoetzel controlled.

2. The commingling of monies and paying of mortgage payments to Kim Knoppe and other lenders for Geyer and JGR Properties, Inc. helped conceal the fact that the two mobile home parks never really changed hands, as the Lenders were led to believe.

3. Evidence will further show that JGR Properties and James Geyer gave certain monies to Robert Stoetzel ear marked to pay Kim Knoppe his due mortgage payments but these monies were redirected by Mr. Stoetzel, Mr. Hiatt, and Premiere Services Mortgage Funding of Ohio, Inc. without the knowledge or permission of James Geyer and JGR Properties or Kim Knoppe.

## COUNT THREE

1. During the time that JGR Properties, Inc. and John and Kimberly Hiatt owned the property, the tenants were billed monthly for water usage by JGR Properties, Inc. The tenants, in turn paid those invoices to JGR Properties/James Geyer.

2. The owners, John and Kimberly Hiatt, and JGR Properties, during their respective ownership periods were pocketing the water monies collected from the tenant and not paying the city water bill. This fact was hidden from the tenants as well as the Lender, Kim Knoppe, when the loan was made.

3. The past due water during the defendants ownership has now become a lien on the property at 2300 Valley St. in an amount of $124,171.42.

## COUNT FOUR

Ex 1.4

1. Previous owners John and Kimberly Hiatt and JGR Properties, Inc./James Geyer would sell mobile homes to the Tenants on an installment sale basis.

2. In addition to the lot rent, the Tenants would make additional monthly payments to JGR Properties, Inc. to be applied against in installment sale for the mobile home.

3. Once the trailers were paid off the titles were never transferred or provided to the Tenant/Buyers in many cases. If the tenants missed a lot rent payment thereafter, an eviction would result and the mobile home would then be retained by JGR Properties/James Geyer/John Hiatt and then sold again to another unsuspecting Tenant/Purchaser.

4. Plaintiff Kim Knoppe has requested rent rolls and ownership records of the mobile homes but such requests have been denied by defendants John and Kimberly Hiatt and James Geyer/JGR Properties, Inc.

## COUNT FIVE

1. Mobile homes would be physically transported from one mobile home park to another without reporting the relocation to the County in an attempt to save fees and to make a mobile home park appear to have more tenants than the mobile home park actually has.

2. Mobile homes that were in disrepair and uninhabitable would either be kept on site or transferred to another mobile home park controlled by the defendants in an attempt to make a mobile home park appear to have more paying units than the park actually has.

## COUNT SIX

1. The defendants further deceived plaintiff by assuring him that his mortgage was one of only two mortgages on the properties.

2. Defendants further agreed to not encumber the properties further.

3. Defendants assured defendant that any mortgages of record had been paid off.

4. Evidence will show that in the loans for the properties at 2300 Valley St., Riverside, Ohio and 4001 Kings Highway, Dayton, Ohio, and on 16 acres on Todd Road, and Rt. 27, parcel no H3610016000002, the defendants knew that other mortgages existed that were not paid off and borrowed further, causing other mortgages do be recorded after plaintiff's mortgage, which was in violation of their verbal assurances and the loan documents signed by defendants.

Ex 1-5

5$. Defendants, Rob Stoetzel, and John Hiatt and Premiere Services Mortgage Funding of Ohio, Inc. acting as a mortgage brokers, knowingly and willingly conspired and agreed together with the other defendants to participate in the scheme to repeatedly over borrow time and again against properties held as collateral for loans made by plaintiff.

Wherefore, defendant, Kim Knoppe, for all the reasons stated above is asking the Court to award him damages in excess of $750,000 from the defendants John Hiatt, Kimberly Hiatt, James R. Geyer, JGR Properties, Inc., Robert Stoetzel, and Premier Services Mortgage Funding of Ohio Inc.

Respectfully submitted,

Kim R. Knoppe, Pro Se
Defendant in the Complaint for Foreclosure
Plaintiff in the Complaint Against Third Parties
544 Enterprise Drive
Lewis Center, Ohio 43035
614-433-9100

CERTIFICATE OF SERVICE

Defendant, Kim R. Knoppe, hereby certifies that a copy of the Answer to plaintiff's Complaint In Foreclosure, Counter Claim, and /Complaint Against Third Parties has been sent regular U. S. Mail this __14__ day of __Sept._____, 2007 to the following addresses:

Deutsche Bank National Trust Co.
c/o Litton Loan Servicing, L.P.
4828 Loop Central Drive
Houston, TX 77081-2226

Rick D. Deblasis, Attorney
Lerner, Sampson & Rothfuss
PO Box 5480
Cincinnati, OH 45201

John and Kimberly Hiatt
7723 Northfork Land
Okeana, OH 45053

Ex 1-6

$28.00 02/21/07 10:00:17
DEED-07-01452B 0002
Montgomery County
Willis E. Blackshear Recorder

TRANSFER
02:59pm        FEBRUARY 20, 2007
KARL L. KEITH, COUNTY AUDITOR
Conv/Tran #: 02978                    $.00

# GENERAL WARRANTY DEED

I391-7-1-14

D-2

**John B. Hiatt, a married man whose wife is Kimberly I. Hiatt,** Grantors, for Ten Dollars ($10.00) and other valuable consideration paid, grant(s) with general warranty covenants, to **Kim R. Knoppe**, whose tax mailing address is 544 Enterprise Drive Lewis Center, OH 43035, the following described property:

Situated in the City of Riverside, County of Montgomery, and State of Ohio, in the northeast and southeast quarters of Section 30, Town 3, Range 7 MRS. Beginning at a railroad spike in the centerline of Valley Pike at the northwest corner of Pleasant Valley Farms Plat, as recorded in Plat Book "M," Page 91 of the Plat Records of Montgomery County, Ohio; thence with the southwest line of said plat, South 41 degrees 24 minutes 50 seconds East, a distance of 962.34 feet to an iron pin in the northwest line of State Route 4 expressway and in the South line of the northeast quarter of said Section 30; thence with the south line of the said northeast quarter and the north line of State Route 4 expressway, North 89 degrees 21 minutes 43 seconds West, a distance of 17.12 feet to an iron pin, said iron pin being 115.00 feet left of centerline station 161+50.81 of said State Route 4 expressway and the true place of beginning of the tract herein described; thence leaving the south line of the said northwest quarter and with the line of said expressway, on a curve to the left with a radius of 5844.58 feet, an arc distance of 269.38 feet to an iron pin; said iron pin being 115.00 feet left of centerline station 158+86.73 of said State Route 4 expressway, the tangent of said curve being the bearing of the line next described; thence continuing with the line of said State Route 4 expressway, South 53 degrees 22 minutes 50 seconds West a distance of 1306.00 feet to an iron pin at an angle point in a former tract of 110.40 acres conveyed to the City of Dayton by deed recorded in Volume 1702, Page 221 of the Deed Records of Montgomery County, Ohio, said iron pin also being 104.97 feet left of the centerline station 145+82.81 of said State Route 4 expressway; thence with lands of the said City of Dayton being the present corporate limits of said city, as recorded in Plat Book 94, Page 29 of the Plat Records of Montgomery County, Ohio, North 42 degrees 09 minutes West, a distance of 802.90 feet to a railroad spike in the centerline of Valley Pike; thence with the centerline of Valley Pike, North 48 degrees 30 minutes East, a distance of 935.58 feet to a railroad spike at the northwest corner of lands conveyed to Raymond J. and Thelma M. Gross by deed recorded in Volume 1200, Page 479 of the Deed Records of Montgomery County, Ohio; thence with the southwest line of said Gross, South 41 degrees 31 minutes East, a distance of 258.30 feet to an iron pin; thence 258.30 feet southeastwardly from and parallel to the centerline of Valley Pike, North 48 degrees 30 minutes East, a distance of 60.73 feet to an iron pin; thence 60.73 feet northeastwardly from and parallel to the southwest line of said Gross land, North 41 degrees 31 minutes West, a distance of 13.30 feet to an iron pin at the southwest corner of a 1.21 acre tract conveyed to Betty L. Law, et al. by deed recorded in microfiche No. 73-4781-B02 of the Deed Records of Montgomery County, Ohio; thence 245.0 feet southeastwardly from and parallel to the centerline of Valley Pike and with the southeasterly line of the said 1.21 acre tract, North 48 degrees 30 minutes East, a distance of 215.00 feet to an iron pin at the southeast corner of the said 1.21 acre tract and in the southwest line of a 1.86 acre tract conveyed to the Pleasant Valley Evangelical and Reformed Church by deed recorded in Volume 1769, Page 315 of the deed records of Montgomery County, Ohio; thence with the southwest line of said 1.86 acre tract, South 41 degrees 31 minutes East, a distance of 374.50 feet to an iron pin at the southwest corner thereof and in the south line of the northeast quarter of said Section 30; thence with the south line of the said 1.86 acre tract and the south line of said northeast quarter South 89 degrees 14 minutes 25 seconds East, a distance of 162.17 feet to a stone monument at the southeast corner of the said 1.86 acre tract; thence along the south line of the premises conveyed to Olive M. Law by Certificate



KARL KEITH
COUNTY AUDITOR
MONTGOMERY COUNTY, DAYTON, OHIO
DESCRIPTION APPROVED FOR
STRAIGHT TRANSFER CLOSURE
NOT CHECKED.
BY _____ DATE 2/20/07

DEFENDANT'S
EXHIBIT
A

of Transfer recorded in Microfiche No. 74-74-D02 of the Deed Records of Montgomery County, Ohio, South 89 degrees 21 minutes 43 seconds East a distance of 331.32 feet to the place of beginning, containing 23.267 acres, more or less.

**Parcel No.     I391-7-1-14**

Former Instrument No. _____

Kimberly I. Hiatt is executing this instrument for the sole purpose of releasing her dower interest therein.

Subject to the following:   The lien of any taxes and assessments not now due and payable; zoning ordinances and regulations; legal highways; and conditions, restrictions, reservations, and easements of record.


Executed this 22nd day of November, 2006

_____          _____
John B. Hiatt                                             Kimberly I. Hiatt

**STATE OF OHIO**
**COUNTY OF** Hamilton

The foregoing instrument was acknowledged before me this **22nd day of November, 2006 by   John B. Hiatt and Kimberly I. Hiatt.**

SHIRLEY N. MANNING
Notary Public, State of Ohio
My Commission Expires
September 12, 2009

_____
**NOTARY PUBLIC**

This Instrument prepared by:
Kim R. Knoppe
544 Enterprise Drive
Lewis Center OH 43035

16-0108

MORT-06-037853 0002
Montgomery County
Judy Dodge Recorder

THIS MORTGAGE is given on **19th day of April, 2006** from **J.G.R. Properties, Inc** whose address is **5500 College Corner Pike, Oxford Ohio 45056** for **One Hundred Thousand Dollars and NO CENTS ($100,000.00)** paid grant(s) with mortgage covenants to Kim R Knoppe of 544 Enterprise Drive, Lewis Center, OH 43035 the following REAL PROPERTY,

**Situate in the City of Riverside, County of Montgomery and State of Ohio, in the northeast and southeast quarters of Section 30, Town 2, Range 7 MRs. Beginning at a railroad spike in the centerline of Valley Pike at the northwest corner of Pleasant Valley Farms Plat as recorded in Plat Book "M", Page 91 of the Plat Records of Montgomery County, Ohio; thence with the southwest line of said plat, South 41 degrees 24 minutes 50 seconds East a distance of 962.34 feet to an iron pin in the northwest line of State Route 4 expressway and in the south line of the northeast quarter of said Section 30; thence with the south line of the said northeast quarter and the north line of State Route 4 expressway, North 89 degrees 21 minutes 43 seconds West a distance of 17.12 feet to an iron pin, said iron pin being 115.00 feet left of centerline station 161+50.81 of said State Route 4 expressway and the true place of beginning of the tract herein described; thence leaving the south line of the said northwest quarter and with the line of said expressway, on a curve to the left with radius of 5844.58 feet, an arc distance of 269.38 feet to an iron pin; said iron pin being 115.00 feet left of centerline station 158+86.73 of said State Route 4 expressway, the tangent of said curve being the bearing of the line next described; thence continuing with the line of said State Route 4 expressway, South 53 degrees 22 minutes 50 seconds West a distance of 1306.00 feet to an iron pin at an angle point in a former tract of 110.40 acres conveyed to the City of Dayton by deed recorded in Volume 1702, Page 221 of the Deed Records of Montgomery County, Ohio, said iron pin also being 104.97 feet left of centerline station 145+82.81 of said State Route 4 expressway; thence with lands of the said City of Dayton being the present corporate limits of said city as recorded in Plat Book 94, Page 29 of the Plat Records of Montgomery County, Ohio, North 42 degrees 09 minutes West a distance of 802.90 feet to a railroad spike in he centerline of Valley Pike; thence with the centerline of Valley Pike, North 48 degrees 30 minutes East a distance of 935.58 feet to a railroad spike at the northwest corner of lands conveyed to Raymond J. and Thelma M. Gross by deed recorded in Volume 1200, Page 479 of the Deed Records of Deed Records of Montgomery County, Ohio; thence with the southwest line of said Gross, South 41 degrees 31 minutes East a distance of 258.30 feet to an iron pin; thence 258.30 feet southeastwardly from and parallel to the centerline of Valley Pike, North 48 degrees 30 minutes East a distance of 60.73 feet to an iron pin; thence 60.73 feet northeastwardly from and parallel to the southwest line of the said Gross land, North 41 degrees 31 minutes West a distance of 13.30 feet to an iron pin at the southwest corner of a 1.21 acre tract conveyed to Betty L. Law, et al by deed recorded in Microfiche No. 73-471-802 of the Deed Records of Montgomery County, Ohio; thence 245.0 feet southeastwardly from and parallel to the centerline of Valley Pike and with the southeasterly line of the said 1.21 acre tract, North 48 degrees 30 minutes East a distance of 215.00 feet to an iron pin at the southeast corner of the said 1.21 acre tract and in the southwest line of a 1.86 acre tract conveyed to the Pleasant Valley Evangelical and Reformed Church by deed recorded in Volume 1769, Page 315 of the Deed Records of Montgomery County, Ohio; thence with the southwest line of said 1.86 acre tract, South 41 degrees 31 minutes East a distance of 374.50 feet to an iron pin at the southwest corner thereof and in the south line of the northeast quarter of said Section 30; thence with the south line of said 1.86 acre tract and the south line of said northeast quarter South 89 degrees 14 minutes 25 seconds East a distance of 162.17 feet to a stone monument at the southeast corner of the said 1.86 acre tract; thence along the south line of the premises conveyed to Olive M. Law by Certificate of Transfer recorded in Microfiche No. 74-74-D02 of the Deed Records of Montgomery County, Ohio, South 89 degrees 21 minutes 43 seconds East a distance of 331.32 feet to the place of beginning, containing 23.267 acres, more or less.**

**Parcel ID No: 1391-7-1-14**

**Address:** 2300 Valley Street, Riverside City, Ohio

This mortgage is given, upon the statutory condition, to secure payment of One Hundred Thousand Dollars and NO CENTS ($100,000.00) with interest as provided in a note of even date.



DEFENDANT'S
EXHIBIT
B

"Statutory condition" is defined in Section 5302.14 of the Revised Code and provides generally that if the mortgagor pays the principal and interest secured by this Mortgage, performs the other obligations secured hereby and the conditions of any prior mortgage, pays all taxes and assessments, maintains insurance against fire and other hazards, and does not commit or suffer waste, then this mortgage shall be void.

**THIS IS A COMMERCIAL LOAN AND NOT A CONSUMER LOAN AND SUCH IS EXEMPT FROM THE MORTGAGE LOAN ACT COVERED UNDER OHIO REVISED CODE 1343.011 (B6).**

Signed this 19th day of April, 2006.

_____
James H. Geyer, President
J.G.R. Properties, Inc.

STATE OF OHIO
COUNTY OF Butler

BE IT REMEMBERED, That on this **19th day of April, 2006**, before me, the subscriber, a Notary Public in and for the said county, personally came **James H. Geyer**, the Mortgagor(s) in the foregoing mortgage, and acknowledged the signing thereof to be voluntary act and deed.
*President of J.G.R. Properties, Inc.
IN TESTIMONY THEREOF, I have hereunto subscribed my name and affixed my seal on this day and year aforesaid.

_____
NOTARY PUBLIC

SARAH E. ABRAMS
NOTARY PUBLIC, STATE OF OHIO
MY COMMISSION EXPIRES
MARCH 5, 2007

THIS INSTRUMENT PREPARED BY: Kim R Knoppe

Ex B-1

*Hiatt*

FILED
COURT COMMON PLEAS
2007 MAR 13 PM 4:42
GREGORY A. BRUSH
CLERK OF COURTS
MONTGOMERY CO OHIO
23

# PRECIPE FOR CERTIFICATE OF JUDGMENT
## COUR OF COMMMOM PLEAS, MONTGOMERY COUNTY, OHIO

Today's Date: <u>February 28, 2007</u> Case No.: _____

Creditor: <u>Kim R. Knoppe</u>                    Debtor: <u>John B. Hiatt and Kimberly I. Hiatt</u>

INSTRUCTIONS TO THE CLERK OF COURTS:

Please prepare and issue a Certificate of Judgment in favor of the Creditor:

Creditor's name: <u>Kim R. Knoppe</u>

Address: <u>544 Enterprise Drive, Lewis Center OH 43035</u>

Render against the Debtor:

Debtor's name: <u>John B. Hiatt and Kimberly I. Hiatt</u>

Address: <u>7723 North Fork Lane, Okeana, OH 45053</u>

File in the following court(s): <u>Civil</u>

JUDGMENT INFORMATION:

Court issuing judgment: _____

Date Issued: _____

Amount of judgment: <u>$212,325.00</u>

Interest Rate: <u>24 %</u>

Interest Rate beginning date: <u>February 22ND, 2007</u>

Additional court costs to be included: _____

PLEASE ATTACH A CERTIFIED COPY OF THE JUDGMENT WHEN FILING THIS PRECIPE.

REQUESTING ATTORNEY:

Name: <u>Kim R. Knoppe – Pro Se</u>

Address: <u>544 Enterprise Drive, Lewis Center OH 43035</u>

Phone: <u>614-433-9100</u>

07 C J 1 5 6 9 9 5
07CJ 156995

### COUNTY CLERK OF COURTS



DEFENDANT'S
EXHIBIT
C

# COMMERCIAL PROMISSORY NOTE WITH COGNOVIT PROVISION
## MONTGOMERY COUNTY, OHIO

### AMOUNT DUE: $187,000.00          DUE DATE: January 21st 2007

PROPERTY ADDRESS:          **2300 Valley Pike, Dayton, Ohio 45404**

PROMISE TO PAY. For value received, the undersigned jointly and severally promises to pay to the order of Kim R. Knoppe at his place of business located at 544 Enterprise Drive, Lewis Center, Ohio 43035, the principal sum of **One Hundred Eighty Seven Thousand Dollars and NO CENTS ($187,000.00).**

All amounts due and owing Lender under this Note shall be secured by a recorded mortgage and a Warranty Deed Held by Lender on the property located at **2300 Valley Pike, Dayton, Ohio 45404** (the "Property"), as more fully set forth in the Agreement Deed Held by Lender for Security.

**COMMERICAL LOAN. This is a commercial loan executed in Montgomery County, Ohio. This loan is for commercial purposes only, and because this is a commercial loan and not a consumer loan it is exempt from the Mortgage Loan Act covered under Ohio Revised Code 1343.011 (B6).**

INTEREST RATE. Interest shall accrue in advance from the date of the first advance under the Loan on the Principal Sum at a rate equal to the Wall Street Journal **prime lending rate plus Ten Percent (10%)** per annum. (the "Interest Rate"). Interest shall be calculated on the basis of a 360 day year and the actual number of days principal is unpaid. In the event that Borrower fails to comply with any of the covenants set forth in this Security Agreement, including but not limited to an event where an installment of interest or the unpaid principal balance is not received by Lender on or before the date such payment is due, Borrower shall be deemed to be delinquent and in default of the terms and provisions hereof and, at Lender's sole discretion and in addition to Lender's other rights hereunder, Lender shall have the right to increase the Interest Rate to a fixed rate equal to the lesser of twenty four percent (24.0%) per annum or the highest interest rate permitted under applicable law, on the outstanding principal balance and accrued and unpaid interest amount.

PAYMENTS. Interest only payments are due in advance the first of each calendar month beginning **December 1st 2006** and ending **January 1st, 2007** Lender shall apply all payments first to any outstanding expense incurred by Lender in connection with this Note, including without limitation reasonable attorney's fees and cost of collection, then in reduction of interest outstanding, if any, and then, in reduction of Principle Sum. Your first interest payment is due in the amount of **$2,843.96**.

OCCUPANCY RESTRICTIONS. This Property shall not be occupied without the written consent of the lender, who will require copies of the lease, the rental application and a set of keys. Under no circumstances shall this property be occupied by the borrower.

LATE CHARGE. If the Note holder has not received the full amount of any monthly payment by the fifth of each month, a late charge in the amount of **10% of the monthly interest payment rounded to the nearest 5 dollars** will be charged and due the Note Holder.

EXTENSIONS. Should this loan not be paid back by the due date, a three (1) month extension fee in the amount of 2% of the principal sum would be charged. An additional extension fee of 3% would be charged for the 2nd One (1) month extension. And, a 4% fee would be charged for the 3rd one (1) month extension, and so on, up to the maximum allowed by law. Should the note become Past Due without an extension fee and/or an extension granted in writing by the note holder, then the Interest Rate for that calendar month forward shall be 24%, in addition to the extension fee being due.

FINANCIAL REPORTING. Upon Request, Borrower will provide Lender with copies of a) Fe_____ Tax returns and b) Updated Personal financial statement and c) Bank Statements.

SIGNAGE. Borrower agrees to allow Lender to place a sign on the property stating "Financed by Ohio Rehab Loans" with Lender's phone number.

AUDIT. In the event of a default, Lender shall have the right to the books and records of Borrower and/or Guarantor at its sole discretion. Borrower and Guarantor agree to fully cooperate with Lender in such audits.

PREPAYMENT. Borrower has the right to make payments of Principal in its entirety at any time before they are due. The note may be prepaid or paid in full at anytime before the due date without penalty.

DEFAULT. This Note and all other liabilities of the undersigned to this payee or to the legal holder hereof, shall become immediately due and payable at the option of the holder hereof at any time without demand or notice upon the occurrence of any of the following events of default: (a) failure of the undersigned to make any payment when due of the principal or interest of this note; (b) failure of the undersigned or any endorser or guarantor hereof to comply with any of the terms and conditions of this Note; (c) death, dissolution, termination of existence, insolvency, business failure, appointment of a receiver of any part of the property of, any bankruptcy or insolvency laws by or against any of the undersigned, endorser or guarantor hereof; (d) nonpayment of any liabilities of the undersigned.

If Borrower is in default an interest rate of Twenty Four Percent (24%) per annum will be applied to the Principle Sum of the loan.

A default on any one loan by Borrower shall be automatically a default on any other loan, and Lender may call such loans due, and or exercise other remedies provided in the loan agreements and Ohio law.

No delay or omission on the part of the holder in exercising any right hereunder shall operate as a waiver of such right or of any other right under this Note. A waiver on any one occasion shall not be construed as a bar to or waiver of any such right and/or remedy on any future occasion.

The undersigned waives presentment, demand, notice, protest and all other demands and notices in connection with the delivery, acceptance, performance, default or enforcement of this note; and assents to any extension or postponement of the time of payment or any other indulgence, and/or to the addition or release of any other party or person primarily or secondarily liable.

The undersigned will pay on demand all costs of collection and reasonable attorneys' fees, incurred or paid by the holder in enforcing this note when the same has become due, whether by acceleration or otherwise.

ASSIGNMENT OF LEASES. Upon Lender's request, Borrower shall assign to Lender all leases of the Property, and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend, or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used here, in the word "lease" shall mean "sublease" in the security instrument is on a leasehold.

ASSIGNMENT OF RENTS; APPOINTMENT OF RECIEVER; LENDER IN POSSESSION. Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of such properties are payable. Borrower authorizes Lender or Lender's agents to collect the Rents and agrees that each tenant of such properties shall pay the rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default in pursuant to the Deed Held by Lender for Security and (ii) Lender has given notice to the tenant(s) that the rents are to be paid to Lender or Lender's agent. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only. If Lender gives notice of breach to Borrower; (i) all rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only to be applied to the sums secured by the Deed Held by Lender for Security; (ii) Lender shall be entitled to collect and receive all of the rents of the Property (iii) Borrower agrees that each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent upon Lender's

written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control and managing the property and collecting the Rents, including, but not limited to, reasonable attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments, and other charges on the Property, and then to the sums secured by the Deed Held by Lender for Security; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manager the Property, and collect Rents and profits derived from such properties without showing as to the inadequacy of the Property as security. If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and collecting of Rents, and funds expended by the Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Deed Held by Lender for Security.

Borrower represents and warrants that Borrower has not executed any prior assignments of rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of, or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver may do so at any time when a default occurs. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when all sums secured by the Deed Held by Lender for Security are paid in full.

VENUE. Should a dispute arise or should this note be in default, the parties agree that the venue would be Municipal and/or Court of Common Pleas in Franklin County, Ohio.

RESTRICTION ON TRANSFERS OR ENCUMBRANCE OF PROPERTY. If all or any part of the Property, or any interest therein is sold, transferred, or is otherwise encumbered (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent Lender may, at its option, require immediate payment in full of all sums secured by the Deed Held by Lender for Security without further notice or demand on Borrower.

GENERAL PROVISIONS. All of the parties hereto, including the undersigned, and any endorser, surety, or guarantor of the obligations represented hereby, severally waive presentment, notice of dishonor, protest, notice of protest, and diligence in bringing suit against any party hereto, and consent that, without discharging any of them, the time of payment may be extended an unlimited number of times before or after maturity without notice. The Lender shall not be required to purse any party hereto, including any guarantor, or to exercise any rights against any Collateral hereof before exercising any other such rights.

The obligations evidenced hereby may from time to time be evidenced by another note or notes given in substitution, renewal or extension hereof. Any security interest or mortgage which secures the obligations evidenced hereby shall remain in full force and effect notwithstanding any such substitutions, renewal, or extension.

The captions used herein are for reference only and shall not be deemed a part of this Note. If any of the terms or provisions of this Note shall be deemed unenforceable, the enforceability of the remaining terms and provisions shall not be affected. This note shall be governed by and construed in accordance with the law of the State of Ohio.

TAXES AND ASSESSMENTS. The Borrower shall pay all taxes or assessments levied or assessed against the Mortgaged Premises, or any part thereof, as and when due, and before penalties occur.

INSURANCE. The Borrower shall procure and maintain in effect at all time adequate insurance with insurance companies acceptable to the Lender against loss, damage to or destruction of the Mortgaged premises because of fire, windstorm, or other such hazards in such amounts as the Lender may reasonably require from time to time, and all such insurance policies shall contain proper clauses making all proceeds of such policies payable to the Borrower and Lender as their respective interests may appear. All such policies payable to the Lender shall be

$\mathcal{DH}$                                                                                            Ex 2-2

delivered to and retained by the Borrower until the indebtedness secured hereby is paid in full. Lender requires a prepaid policy for the full value of the note naming him as additional insured. The mortgagee clause should read as follows: Kim R. Knoppe, 544 Enterprise Drive, Lewis Center, OH 43035

NON WAIVER, REMEDIES CUMLATIVE. Time is of the essence in the performance of obligations hereunder. No delay by the Lender in the exercise of any rights hereunder shall preclude the exercise there so long as the Borrower is not in default hereunder, and no failure of the Lender to exercise any rights hereunder shall preclude the exercise hereof in the event of subsequent default by the Borrower hereunder. The Lender may enforce one or more of the rights or remedies hereunder successively or concurrently.

WAIVER OF RIGHT TO TRIAL BY JURY. LENDER AND THE UNDERSIGNED EACH ACKNOWLEDGE THAT, AS TO ANY AND ALL DISPUTES THAT MAY ARISE BETWEEN THE UNDERSIGNED AND THE LENDER, THE COMMERICAL NATURE OF THE TRANSACTION OUT OF WHICH THIS NOTE ARISES WOULD MAKE ANY SUCH DISPUTE UNSUITABLE FOR TRIAL BY JURY. ACCORDINGLY, LENDER BY ITS ACCEPTANCE OF THIS NOTE, AND THE UNDERSIGNED HEREBY WAIVE ANY RIGHT TO TRAIL BY JURY AS TO ANY AND ALL DISPUTES THAT MAY ARISE RELATING TO THIS NOTE OR TO ANY OTHER INSTRUMENTS OR DOCUMENTS EXECUTED IN CONNECTION HEREWITH.

WARRANT OF ATTORNEY. The undersigned authorizes any attorney at law to appear in any Court of Record in the State of Ohio or in any other state or territory of the United States after the above indebtedness becomes due, whether by acceleration or otherwise, to waive the issuing and service of process and to confess judgment against any one or more of the undersigned in favor of Lender for the amount then appearing due together with the cost of the suit, and thereupon to waive all errors and all rights of appeal and stays of execution. No such judgment or judgments against any on or more of the undersigned against whom judgment has not been obtained hereon; this being a joint and several warrant of attorney to confess judgment.

**WARNING - BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRAIL. IF YOU DO NOT PAY ON TIME A COURT JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO COLLECT FROM YOU REGARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON HIS PART TO COMPLY WITH THIS AGREEMENT, OR ANY OTHER CAUSE.**

| | | | |
|---|---|---|---|
| John B. Hiatt | 4/22/06 | Kimberly I. Hiatt | 11/22/06 |
| | Date | | Date |

STATE OF OHIO
COUNTY OF _Hamilton_

On this 22nd day of November, 2006 before me, a Notary Public in and for the said County and State, personally appeared **John B. Hiatt and Kimberly I. Hiatt**, the individual who executed the foregoing instrument and acknowledged that they did examine and read the same and did sign the foregoing instrument, and that the same is their free act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal

SHIRLEY N. MANNING
Notary Public, State of Ohio
My Commission Expires
September 12, 2009

_____
NOTARY PUBLIC

Ex 2.3

*Hiatt laws*

THIS MORTGAGE is given on **22nd day of November, 2006** from **John B. Hiatt, a married man whose wife is Kimberly I. Hiatt**, whose address is **7723 North Fork Lane, Okeana, Ohio 45053** for **One Hundred Eighty Seven Thousand Dollars and NO CENTS ($187,000.00)** paid grant(s) with mortgage covenants to **Kim R Knoppe** of **544 Enterprise Drive, Lewis Center, OH 43035** the following REAL PROPERTY,

**PARCEL ONE:**

Situated in the City of Riverside, County of Montgomery, and State of Ohio, in the northeast and southeast quarters of Section 30, Town 3, Range 7 MRS. Beginning at a railroad spike in the centerline of Valley Pike at the northwest corner of Pleasant Valley Farms Plat, as recorded in Plat Book "M," Page 91 of the Plat Records of Montgomery County, Ohio; thence with the southwest line of said plat, South 41 degrees 24 minutes 50 seconds East, a distance of 962.34 feet to an iron pin in the northwest line of State Route 4 expressway and in the South line of the northeast quarter of said Section 30; thence with the south line of the said northeast quarter and the north line of State Route 4 expressway, North 89 degrees 21 minutes 43 seconds West, a distance of 17.12 feet to an iron pin, said iron pin being 115.00 feet left of centerline station 161+50.81 of said State Route 4 expressway and the true place of beginning of the tract herein described; thence leaving the south line of the said northwest quarter and with the line of said expressway, on a curve to the left with a radius of 5844.58 feet, an arc distance of 269.38 feet to an iron pin; said iron pin being 115.00 feet left of centerline station 158+86.73 of said State Route 4 expressway, the tangent of said curve being the bearing of the line next described; thence continuing with the line of said State Route 4 expressway, South 53 degrees 22 minutes 50 seconds West a distance of 1306.00 feet to an iron pin at an angle point in a former tract of 110.40 acres conveyed to the City of Dayton by deed recorded in Volume 1702, Page 221 of the Deed Records of Montgomery County, Ohio, said iron pin also being 104.97 feet left of the centerline station 145+82.81 of said State Route 4 expressway; thence with lands of the said City of Dayton being the present corporate limits of said city, as recorded in Plat Book 94, Page 29 of the Plat Records of Montgomery County, Ohio, North 42 degrees 09 minutes West, a distance of 802.90 feet to a railroad spike in the centerline of Valley Pike; thence with the centerline of Valley Pike, North 48 degrees 30 minutes East, a distance of 935.58 feet to a railroad spike at the northwest corner of lands conveyed to Raymond J. and Thelma M. Gross by deed recorded in Volume 1200, Page 479 of the Deed Records of Montgomery County, Ohio; thence with the southwest line of said Gross, South 41 degrees 31 minutes East, a distance of 258.30 feet to an iron pin; thence 258.30 feet southeastwardly from and parallel to the centerline of Valley Pike, North 48 degrees 30 minutes East, a distance of 60.73 feet to an iron pin; thence 60.73 feet northeastwardly from and parallel to the southwest line of said Gross land, North 41 degrees 31 minutes West, a distance of 13.30 feet to an iron pin at the southwest corner of a 1.21 acre tract conveyed to Betty L. Law, et al. by deed recorded in microfiche No. 73-4781-B02 of the Deed Records of Montgomery County, Ohio; thence 245.0 feet southeastwardly from and parallel to the centerline of Valley Pike and with the southeasterly line of the said 1.21 acre tract, North 48 degrees 30 minutes East, a distance of 215.00 feet to an iron pin at the southeast corner of the said 1.21 acre tract and in the southwest line of a 1.86 acre tract conveyed to the Pleasant Valley Evangelical and Reformed Church by deed recorded in Volume 1769, Page 315 of the deed records of Montgomery County, Ohio; thence with the southwest line of said 1.86 acre tract, South 41 degrees 31 minutes East, a distance of 374.50 feet to an iron pin at the southwest corner thereof and in the south line of the northeast quarter of said Section 30; thence with the south line of the said 1.86 acre tract and the south line of said northeast quarter South 89 degrees 14 minutes 25 seconds East, a distance of 162.17 feet to a stone monument at the southeast corner of the said 1.86 acre tract; thence along the south line of the premises conveyed to Olive M. Law by Certificate of Transfer recorded in Microfiche No. 74-74-D02 of the Deed Records of Montgomery County, Ohio, South 89 degrees 21 minutes 43 seconds East a distance of 331.32 feet to the place of beginning, containing 23.267 acres, more or less.

Parcel No.    I391-7-1-14

**PARCEL TWO:**

Situated in the City of Dayton, County of Montgomery and State of Ohio, and being more fully described as Lots Numbered Sixty- Eight Thousand Six Hundred Fifty (68650), Sixty- Eight Thousand Six Hundred Fifty-One (68651), Sixty-Eight Thousand Six Hundred Seventy-One (68671), Sixty-Eight Thousand Six Hundred Seventy-Two (68672), and Sixty-Eight Thousand Six Hundred Seventy-Three (68673) of the consecutive numbers of Lots on the Revised Plat of the said City of Dayton, Ohio.

Excepting therefrom parts of said Lots Numbered 68650 and 68651 described as follows:

Located in the City of Dayton, County of Montgomery, State of Ohio, and being part of Lots 68650 and 68651 of the revised and consecutive numbers of Lots on the Plat of said City of Dayton, Ohio, being a tract of land described as follows:

Beginning at the intersection of the north line of Kings Highway, a fifty (50) foot street, with the west line of Fairport Avenue, a fifty (50) foot street, thence with the north line of said Kings Highway, due West for Four Hundred and 00/100 (400.00) feet; thence North 21 deg. 00' East for One Hundred Sixty and 00/100 (160.00) feet; thence North 41 deg. 21' 30" East for Three Hundred Twenty-Eight and 71/100 (328.71) feet; thence North 00' 04" West for Four Hundred Thirty-Five and 00/100 (435.00) feet to a point in the South line of C.W. Sharp and Sons Plat, as recorded in Book Z, Pages 44 in the Plat Records of Montgomery County, Ohio; thence with the South line of said Sharp Plat, North 89 deg. 53' East for One Hundred Twenty-Five and 00/100 (125.00) feet to a point in the West line of said Fairport Avenue; thence with the West line of said Fairport Avenue, South 00 deg. 04' East for Eight Hundred Thirty-One and 35/100 (831.35) feet to the point of beginning, containing 3.846 acres, more or less, and subject to all legal highways, easements, restrictions and agreements of record, according to a survey of said premises by A. Bodenstein, Registered Surveyor, State of Ohio.

**Parcel Nos.:  R72-158-5-1,2 and R72-158-4,5,6**

This mortgage is given, upon the statutory condition, to secure payment of One Hundred Eighty Seven Thousand Dollars and NO CENTS ($187,000.00) with interest as provided in a note of even date.

Kimberly I. Hiatt is executing this instrument for the sole purpose of releasing her dower interest therein.

"Statutory condition" is defined in Section 5302.14 of the Revised Code and provides generally that if the mortgagor pays the principal and interest secured by this Mortgage, performs the other obligations secured hereby and the conditions of any prior mortgage, pays all taxes and assessments, maintains insurance against fire and other hazards, and does not commit or suffer waste, then this mortgage shall be void.

**THIS IS A COMMERCIAL LOAN AND NOT A CONSUMER LOAN AND SUCH IS EXEMPT FROM THE MORTGAGE LOAN ACT COVERED UNDER OHIO REVISED CODE 1343.011 (B6).**

Signed this 22nd day of November, 2006.

_____
John B. Hiatt

_____
Kimberly I. Hiatt

STATE OF OHIO
COUNTY OF Hamilton

BE IT REMEMBERED, That on this **22nd day of November, 2006**, before me, the subscriber, a Notary Public in and for the said county, personally came **John B. Hiatt and Kimberly I. Hiatt**, the Mortgagor(s) in the foregoing mortgage, and acknowledged the signing thereof to be voluntary act and deed.

IN TESTIMONY THEREOF, I have hereunto subscribed my name and affixed my seal on this day and year aforesaid.

_____
NOTARY PUBLIC

SHIRLEY N. MANNING
Notary Public, State of Ohio
My Commission Expires
September 12, 2009

THIS INSTRUMENT PREPARED BY: Kim R Knoppe

Ex 3-1

(Printed on Sep 01, 2006 @ 11:21)

**A.**                                        SETTLEMENT STATEMENT                                    OMB No. 2502-0265

| B.  Type of Loan | | |
|---|---|---|
| 1. [ ] FHA   2. [ ] FmHA   3. [X] Conv. Unins. <br> 4. [ ] VA  5. [ ] Conv. Ins. | 6.  File Number: <br> 60618479 | 7.  Loan Number: <br> 2006102301       8.  Mortgage Ins. Case #: |

C. NOTE:  This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown.  Items marked "POC" were paid outside the closing; they are shown here for information purposes and are not included in the totals.

**D. NAME AND ADDRESS OF BORROWER:**
John  Hiatt 2300 Valley Pike Dayton, OH 45401

**E. NAME AND ADDRESS OF SELLER:**
GS Holdings-Law, Ltd., an Ohio Limited Liability Company 5500 College Corner Pike Oxford, OH 45056
James H. Geyer, Member 5500 College Corner Pike Oxford, OH 45056

**F. NAME AND ADDRESS OF LENDER:**
LNB Commercial Capital DBA Premier Commercial 500 N. Maitland Ave., Suite 315 Maitland, FL 32751

**G. PROPERTY LOCATION:**
2300 Valley Street Dayton, OH  45404

| H. SETTLEMENT AGENT: <br> National Real Estate Information Services   Contact: Debbie Cinque | PLACE OF SETTLEMENT: <br> 100 Beecham Drive Pittsburgh, PA  15205-4601 |
|---|---|
| I.  SETTLEMENT DATE: <br> 09/01/2006 | DISBURSEMENT DATE: <br> 09/01/2006 |

| J. SUMMARY OF BORROWER(S) TRANSACTION | | K. SUMMARY OF SELLER(S) TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER :** | | **400.  GROSS AMOUNT DUE TO SELLER :** | |
| 101.  Contract sales price | 2,100,000.00 | 401.  Contract sales price | 2,100,000.00 |
| 102. Personal Property | | 402.  Personal Property | |
| 103.  Settlement charges to borrower (line 1400) | 64,252.29 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by Seller in advance | | Adjustments for items paid by Seller in advance | |
| 106. City/town taxes | | 406.  City/town taxes | |
| 107. County taxes | | 407.  County taxes | |
| 108. Assessments | | 408.  Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120.  Gross Amount Due From Borrower** | 2,164,252.29 | **420.  Gross Amount Due Seller** | 2,100,000.00 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER :** | | **500.  REDUCTIONS IN AMOUNT DUE TO SELLER :** | |
| 201. Deposit or earnest money | | 501.  Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 1,575,000.00 | 502.  Settlement charges to seller (line 1400) | 48,096.52 |
| 203. Existing loan(s) taken subject to | | 503.  Existing loan(s) taken subject to | |
| 204. | | 504.  Payoff of first mortgage loan Maurice & Dorothy G | 1,000,000.00 |
| 205. | | 505.  Payoff of second mortgage loan Terri Schaefer | 30,000.00 |
| 206. Lender Credit | 6,000.00 | 506. | |
| 207. Lender Credit (Out of Network Fee) | 2,500.00 | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by Seller in advance | | Adjustments for items unpaid by Seller in advance | |
| 210. City/town taxes 01/01/06 to 09/01/06 | 18,075.26 | 510.  City/town taxes 01/01/06 to 09/01/06 | 18,075.26 |
| 211. County taxes | | 511.  County taxes | |
| 212. Assessments | | 512.  Assessments | |
| 213. Seller Paid Closing Costs | 25,851.66 | 513.  Seller Paid Closing Costs | 25,851.66 |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid By/For Borrower** | 1,627,426.92 | **520.  Total Reduction Amount Due Seller** | 1,122,023.44 |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER :** | | **600.  CASH AT SETTLEMENT TO/FROM SELLER :** | |
| 301. Gross Amount due from borrower (line 120) | 2,164,252.29 | 601.  Gross amount due to seller (line 420) | 2,100,000.00 |
| 302. Less amounts paid by/for borrower (line 220) | 1,627,426.92 | 602.  Less reductions in amt. due seller (line 520) | 1,122,023.44 |
| 303.  Cash [X]From [ ]To  Borrower | 536,825.37 | 603.  Cash [X]To  [ ]From  Seller | 977,976.56 |



**EXHIBIT B-2**

(Printed on Sep 21, 2006 @ 11:21)                                                                OMB No. 2502-0265
**L.**                          **SETTLEMENT CHARGES**

| 700. Total Sales/Broker's Commission based on price | Paid from Borrower's Funds at Settlement | Paid from Seller's Funds at Settlement |
|---|---|---|
| 701. Listing Realtor Commission | | |
| 702. Selling Realtor Commission | | |
| 703. Commission paid at Settlement | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | |
| 801. Loan Origination Fee | | |
| 802. Loan Discount | | |
| 803. Appraisal Fee#A006-016568 | | |
| 804. Credit Report | | |
| 805. Property Inspection fee: #A006-016567 | | |
| 806. Fixed pricing fee: To include #'s 803,805,904, 1101 & 1105 To: NREIS | 7,875.00 | |
| 807. MERS Registration fee:  To: LNB Commercial Capital DBA Premier Commercial | 50.00 | |
| 808. Flood Certification Fee  To: National Real Estate Information Services | 15.00 | |
| 809. | | |
| 810. Lender Processing fee POC $585.00 to LNB Commercial Capital | | |
| 811. Mortgage Broker Fee  To: C & S Processing | 15,750.00 | |
| 812. Broker Processing fee:  To: C & S Processing | 1,000.00 | |
| 813. Out of Newtwork Legal & Title Review Fee:  To: CLS, LLP | 2,500.00 | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | |
| 901. Interest from 09/01/2006 to 10/01/2006 @ 382.81/day To: LNB Commercial Capital | 11,484.30 | |
| 902. Mortgage Insurance Premium for | | |
| 903. Hazard Insurance Premium forPOC $8528.00 to Downey Stover Insurance Agency | | |
| 904. | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | |
| 1001. Hazard insurance 5 months @ 710.67 per month To: LNB Commercial Capital DBA Premier Commercial | 3,553.35 | |
| 1002. Mortgage insurance | | |
| 1003. City property taxes 6 months @ 2263.83 per month To: LNB Commercial Capital DBA Premier Commercial | 13,582.98 | |
| 1004. County property taxes | | |
| 1005. Annual assessments | | |
| 1006. | | |
| 1007. Aggregate Accounting Adjustment | | |
| **1100. TITLE CHARGES** | | |
| 1101. Settlement or closing fee to:  NREIS | | |
| 1102. Abstract or title search | | |
| 1103. Title examination  To: Smart Choice Title Company | 875.00 | |
| 1104. Title insurance binder  To: Smart Choice Title Company | 50.00 | |
| 1105. Document preparation(Loan docs)/Legal Fees to:  CLS, LLP | | |
| 1106. Notary Fees | | |
| 1107. Attorney's Fees | | |
| (includes above item numbers: ) | | |
| 1108. Title Insurance  To: Smart Choice Title Company | 3,968.75 | |
| (includes above item numbers: ) | | |
| 1109. Lender's coverage@ $1,575,000.00 | | |
| 1110. Owner's coverage @ $ | | |
| 1111. Endorsement(EPA, Survey, Alta 9, Arm, Zoning, Assignment, Access, Clntiguity, | | |
| 1112. Closing Protection Letter | | |
| 1113. Courier Fee | | |
| 1114. Tax Cert Fee | | |
| 1115. Endorsements: Usury, Tax Parcel, Address, Credit Rts, Doint Busi.  Total:  To: Smart Choice | 3,167.91 | |
| 1116. Deed Preparation  To: National Real Estate Information Services | | 85.00 |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | |
| 1201. Recording fees:Mortgage  To: Smart Choice Title Company | 292.00 | |
| 1202. City/county tax/stamps:  To: Smart Choice Title Company | | 4,200.50 |
| 1203. State tax/stamps: | | |
| 1204. Recording fees:  To: Smart Choice Title Company | 44.00 | |
| 1205. Recording fees:  Assignment of Mortgage  To: Smart Choice Title Company | 44.00 | |
| 1206. | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | |
| 1301. | | |
| 1302. 2005 Delinquent Property taxes Parcel#139100701-0014 To: Montgomery County Treasurer | | 43,811.02 |
| 1303. | | |
| **1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K)** | 64,252.29 | 48,096.52 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of HUD-1 Settlement Statement.

BORROWER/                                         SELLER(S) /
John Blair        9/1/06                          GS HOLDINGS LTD.
                                                  GS Holdings-Law, Ltd., an Ohio Limited Liability Company

                                                  James B. Geyh, Member  MEMBER

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

                                                  09-01-06
                                                  Date

National Real Estate Information Services
NOTE: Taxes have been prorated based on taxes for the year.  Any re-proration will be handled between the buyer and seller.  All utility bills (water, sewer, electric, cable and maintenance fees) have been paid or will be paid upon receipt of final bills.
WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine or imprisonment.  For details see: Title 18 U.S. Code Section 1001 and Section 1010.

Ex 4-1

| A. U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT | B. | TYPE | OF | LOAN |
|---|---|---|---|---|
| **SETTLEMENT STATEMENT** | 1. ☐ FHA | 2. ☐ FHMA | 3. ☐ CONV. UNINS. | |

| B. | TYPE | OF | LOAN |
|---|---|---|---|
| 1. ☐ FHA | 2. ☐ FHMA | 3. ☐ CONV. UNINS. |
| 4. ☐ VA | 5. ☐ CONV. INS. | |
| 6. FILE NUMBER: | 7. LOAN NUMBER |
| 06-0357 | |
| 8. MORTGAGE INS. CASE NO.: | |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

D. NAME & ADDRESS       John B. Hiatt
 OF BORROWER:

E. NAME & ADDRESS
 OF SELLER:

F. NAME & ADDRESS       Kim R. Knoppe
 OF LENDER:      544 Enterprise Drive, 2nd Floor, Lewis Center, OH 43035

G. PROPERTY LOCATION:   2300-2306 Valley Pike, Dayton, OH 45404

H. SETTLEMENT AGENT:    Smart Choice Title Company
 PLACE OF SETTLEMENT: 10921 Reed Hartman Highway, Suite 117-119, Cincinnati, OH  45242 (513) 842-6001

I. SETTLEMENT DATE:   11/22/2006  Final            DISBURSEMENT DATE:   11/22/2006

| J.            Summary of Borrower's Transaction | | K.            Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due From Borrower:** | | **400. Gross Amount Due To Seller:** | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower: (line 1400) | 38,082.25 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| | | | |
| | | | |
| | | | |
| **Adjustments For Items Paid By Seller In Advance:** | | **Adjustments For Items Paid By Seller In Advance:** | |
| 106. City/town taxes            to | | 406. City/town taxes            to | |
| 107. County taxes            to | | 407. County taxes            to | |
| 108. Assessments            to | | 408. Assessments            to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| 116. | | 416. | |
| **120. Gross Amount Due From Borrower:** | 38,082.25 | **420. Gross Amount Due To Seller:** | |
| **200. Amounts Paid Or In Behalf Of Borrower:** | | **500. Reductions In Amount Due To Seller:** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 187,000.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff 1st Mtg. Ln. | |
| 205. | | 505. Payoff 2nd Mtg. Ln. | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| | | | |
| | | | |
| **Adjustments For Items Unpaid By Seller:** | | **Adjustments For Items Unpaid By Seller:** | |
| 210. City/town taxes            to | | 510. City/town taxes            to | |
| 211. County taxes            to | | 511. County taxes            to | |
| 212. Assessments            to | | 512. Assessments            to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| | | | |
| **220. Total Paid By/For Borrower:** | 187,000.00 | **520. Total Reductions In Amount Due Seller:** | |
| **300. Cash At Settlement From/To Borrower:** | | **600. Cash At Settlement From/To Seller:** | |
| 301. Gross amount due from borrower (line 120) | 38,082.25 | 601. Gross amount due to seller (line 420) | |
| 302. Less amount paid by/for borrower (line 220) | 187,000.00 | 602. Less reductions in amount due seller (line 520) | |
| **303. Cash ( FROM) ☒TO) Borrower:** | 148,917.75 | **603. Cash ( TO) ( FROM) Seller:** | |

Previous Edition Is Obsolete
Form No. 1581
3/86

X _____

X _____

Page 1 of  3      X _____

                  X _____

SB

RES

| | | | Paid From Borrower's Funds At Settlement | Paid From Seller's Funds At Settlement |
|---|---|---|---|---|
| | tal Sales/Broker's Commission: | | | |
| | Based On Price $ | @ % = | | |
| | sion of Commission (line 700) As Follows: | | | |
| | Jl. $ | to | | |
| | 2. $ | to | | |
| 703. | Commission paid at settlement | | | |
| 704. | | | | |
| **800.** | **Items Payable In Connection With Loan:** | | | |
| 801. | Loan Origination fee     % Premier Mortgage Funding of Ohio, Inc. | | 3,740.00 | |
| 802. | Loan Discount     % | | | |
| 803. | Appraisal fee to: | | | |
| 804. | Credit report to: | | | |
| 805. | Lender's inspection fee | | | |
| 806. | Mortgage insurance application fee to | | | |
| 807. | Assumption fee | | | |
| 808. | 15.0000% Loan Fee To: Kim R. Knoppe | | 28,050.00 | |
| 809. | Flood Determination To: Kim R. Knoppe | | 25.00 | |
| 810. | Commitment Fee To: Kim R. Knoppe | | 275.00 | |
| 811. | Application And Appraisal Fee To: Kim R. Knoppe | | 350.00 | |
| 812. | Federal Express To: Kim R. Knoppe | | 300.00 | |
| 813. | Survey Waiver Fee To: Kim R. Knoppe | | 85.00 | |
| 814. | SOM And Recording To: Kim R. Knoppe | | 75.00 | |
| 815. | Reconveyance Fee To: Kim R. Knoppe | | 40.00 | |
| 816. | Wire Fee To: Kim R. Knoppe | | 30.00 | |
| **900.** | **Items Required By Lender To Be Paid In Advance:** | | | |
| 901. | Interest from 11/22/2006 to 12/31/2006 @$ 94.8000 /day (39 days) | | 3,792.00 | |
| 902. | Mortgage insurance premium for   mo. to | | | |
| 903. | Hazard insurance premium for   yrs. to | | | |
| 904. | Flood insurance premium for   yrs. to | | | |
| 905. | | | | |
| 3: | | | | |
| **.00.** | **Reserves Deposited With Lender:** | | | |
| 1001. | Hazard insurance   0 months @ $   0.00 per month | | | |
| 1002. | Mortgage insurance   0 months @ $   0.00 per month | | | |
| 1003. | City property taxes   0 months @ $   0.00 per month | | | |
| 1004. | County property taxes   0 months @ $   0.00 per month | | | |
| 1005. | Annual assessments   0 months @ $   0.00 per month | | | |
| 1006. | Flood insurance   0 months @ $   0.00 per month | | | |
| 1007. |   0 months @ $   0.00 per month | | | |
| 1008. | Aggregate Adjustment | | | |
| 1009. | | | | |
| **1100.** | **Title Charges** | | | |
| 1101. | Settlement or closing fee to Smart Choice Title Company | | 150.00 | |
| 1102. | Abstract or title search to | | | |
| 1103. | Title examination to   Smart Choice Title Company | | 300.00 | |
| 1104. | Title insurance binder to   Smart Choice Title Company | | 50.00 | |
| 1105. | Document preparation to | | | |
| 1106. | Notary fees to | | | |
| 1107. | Attorney's fees to | | | |
| | (includes above item Numbers:   ) | | | |
| 1108. | Title insurance to Smart Choice Title Company | | | |
| | (includes above item Numbers:   ) | | 720.25 | |
| 1109. | Lender's coverage $ 187,000.00 Premium: $720.25 | | | |
| 1110. | Owner's coverage $ | | | |
| 1111. | | | | |
| 1112. | | | | |
| 13. | | | | |
| 14. | | | | |
| **1200.** | **Government Recording and Transfer Charges:** | | | |
| 1201. | Recording fees: Deed $   0.00  ;Mortgage $   0.00  :Releases $   0.00 | | | |
| 1202. | City/county tax/stamps: Deed $   0.00  :Mortgage $   0.00 | | | |
| 1203. | State tax/Stamps:   Deed $   0.00  :Mortgage $   0.00 | | | |
| 1204. | Recording/Handling Fee to Smart Choice Title Company | | 100.00 | |
| 1205. | | | | |
| **1300.** | **Additional Settlement Charges:** | | | |
| 1301. | Survey to | | | |
| 1302. | Pest inspection to | | | |
| 1303. | | | | |
| 1304. | | | | |
| 1305. | | | | |
| 306. | | | | |
| 17. | | | | |
| 308. | | | | |
| 1309. | | | | |
| 1310. | | | | |
| 1311. | | | | |
| 1312. | | | | |
| 1313. | | | | |
| **1400.** | **Total Settlement Charge** *(Enter on line 103, Section J - and - line 502, Section K)* | | 38,082.25 | |

Form No. 1582

X            X            X            X

Ex 5-1

..ve carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and ..sbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Borrowers/Purchasers                             Sellers

John B. Hiatt

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Settlement Agent                                   Date:   614-433-0570

              Shirley Manning, Smart Choice Title Company

**WARNING:** It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine or imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

Ex. 5.2

9/1/06

Dear Sir:

Please be advised that the $100,000 mortgage from me to James Geyer has been paid in full and is being released at the Montgomery County Courthouse.

Sincerely,

Kim R. Knoppe

*Kim R. Knoppe*

**EXHIBIT B-3**

Hiatt

FILED
COURT COMMON PLEAS
PRECIPE FOR CERTIFICATE OF JUDGMENT
2007 MAR 13 PM 4: 42
COUR OF COMMOM PLEAS, MONTGOMERY COUNTY, OHIO
GREGORY A. BRUSH
CLERK OF COURTS
MONTGOMERY CO. OHIO

Today's Date: <u>February 28, 2007</u>  Case No.: _____

Creditor: <u>Kim R. Knoppe</u>  Debtor: <u>John B. Hiatt and Kimberly I. Hiatt</u>

**INSTRUCTIONS TO THE CLERK OF COURTS:**

Please prepare and issue a Certificate of Judgment in favor of the Creditor:

Creditor's name: <u>Kim R. Knoppe</u>

Address: <u>544 Enterprise Drive, Lewis Center OH 43035</u>

Render against the Debtor:

Debtor's name: <u>John B. Hiatt and Kimberly I. Hiatt</u>

Address: <u>7723 North Fork Lane, Okeana, OH 45053</u>

File in the following court(s): <u>Civil</u>

**JUDGMENT INFORMATION:**

Court issuing judgment: _____

Date Issued: _____

Amount of judgment: <u>$212,325.00</u>

Interest Rate: <u>24 %</u>

Interest Rate beginning date: <u>February 22nd, 2007</u>

Additional court costs to be included: _____

**PLEASE ATTACH A CERTIFIED COPY OF THE JUDGMENT WHEN FILING THIS PRECIPE.**

**REQUESTING ATTORNEY:**

Name: <u>Kim R. Knoppe – Pro Se</u>

Address: <u>544 Enterprise Drive, Lewis Center OH 43035</u>

Phone: <u>614-433-9100</u>

07 C J 156995
07CJ156995

**COUNTY CLERK OF COURTS**



# BUSINESS TO BUSINESS ACKNOWLEDGMENT

The Borrower and Lender acknowledge the following regarding this loan transaction:

1. That the Borrower(s) are in the business of purchasing real estate with the intent to remodel and improve the property for a profit. The Borrower(s) operate an ongoing business and have experience in speculative real estate remodeling and investing.

2. That this property will not be used for his/her personal residence.

3. That this is a business to business transaction and the borrower(s) is/are not a consumer, but a business obtaining an interim short term business loan.

4. That the Lender is an individual lending his own money and not a mortgage broker, financial institution, or a representative of another money investor.

5. That this loan is intended as a short term interim financing only.

6. That this loan is deemed risky because the property needs to be substantially improved, and/or the loan is over 100% of the purchase price, and/or made without income verification of the borrower.

Acknowledged this 22nd day of November, 2006

_____        _____
John B. Hiatt                          Kimberly I. Hiatt



Laws Mobile Home Park
Rent Roll-April :

| | | | |
|---|---|---|---|
| 1 | 2301 Marshfield | | $217.00 |
| 2 | 2304 Winnabago | | $217.00 |
| 3 | 2314 Winnabago | | $217.00 |
| 4 | 2315 Marshfield | | $217.00 |
| 5 | 2321 Crossland | | $217.00 |
| 6 | 2321 Dreamer | | $217.00 |
| 7 | 2321 Elcar | | $217.00 |
| 8 | 2321 Moon | | $217.00 |
| 9 | 2321 Sahara | | $217.00 |
| 10 | 2322 Crossland | | $217.60 |
| 11 | 2322 Corsair | | $250.00 |
| 12 | 2322 Dreamer | c | |
| 13 | 2326 Dreamer | c | |
| 14 | 2332 Dreamer | c | $365.00 |
| 15 | 2322 Moon | | $217.00 |
| 16 | 2822 Sahara | | $313.20 |
| 17 | 2324 Winnabago | | $265.96 |
| 18 | 2325 Marshfield | | $217.00 |
| 19 | 2325 Moon | | $237.00 |
| 20 | 2326 Corsair | | $217.00 |
| 21 | 2326 Moon | | $217.00 |
| 22 | 2326 Sahara | | $85.00 |
| 23 | 2327 Crossland | | $85.00 |
| 24 | 2528 Crossland | | $217.00 |
| 25 | 2329 Elcar | | $217.00 |
| 26 | 2329 Moon | | $85.00 |
| 27 | 2330 Corsair | | $311.28 |
| 28 | 2330 Sahara | | $217.00 |
| 29 | 2330 Winnabago | | $335.00 |
| 30 | 2331 Marshfield | | $217.00 |
| 31 | 2331 Sahara | | $217.00 |
| 32 | 2332 Moon | | $217.00 |
| 33 | 2333 Dreamer | | $247.00 |
| 34 | 2334 Crossland | | $217.00 |
| 35 | 2334 Corsair | | $217.00 |
| 36 | 2336 Winnabago | | $217.00 |
| 37 | 2337 Elcar | | $217.00 |
| 38 | 2337 Marshfield | | $217.00 |
| 39 | 2338 Corsair | | $217.00 |
| 40 | 2338 Dreamer | | $217.00 |
| 41 | 2338 Sahar | | $217.00 |
| 42 | 2339 Crossland | | $217.00 |
| 43 | 2340 Crossland | | $217.00 |
| 44 | 2341 Dreamr | | $217.00 |
| 45 | 2341 Moon | | $217.00 |
| 46 | 2342 Corsair | | $217.00 |
| 47 | 2342 Dreamer | | $217.00 |
| 48 | 2342 Winnabago | | $300.00 |
| 49 | 2343 Elcar | | $217.00 |
| 50 | 2343 Moon | | $85.00 |
| 51 | 2343 Marshfield | | $217.00 |

*Gutmann & Middleton Valuations, Inc.* 73

000174

| | | | |
|---|---|---|---|
| 52 | 2343 Sahara | | $217.00 |
| 53 | 2344 Moon | | $217.00 |
| 54 | 2345 Moon | | $217.00 |
| 55 | 2345 Crossland | | $217.00 |
| 56 | 2346 Corsair | | $217.00 |
| 57 | 2346 Moon | | $217.00 |
| 58 | 2346 Sahara | | $217.00 |
| 59 | 2347 Sahara | | $217.00 |
| 60 | 2348 Winnebago | | $250.00 |
| 61 | 2349 Dreamer | | $300.00 |
| 62 | 2349 Elcar | | $260.00 |
| 63 | 2349 Moon | | $50.00 |
| 64 | 2349 Marshfield | | $290.00 |
| 65 | 2349 Sahara | c | |
| 66 | 2353 Sahara | c | |
| 67 | 2357 Sahara | c | |
| 68 | 2350 Crossland | | $217.00 |
| 69 | 2350 Corsair | | $217.00 |
| 70 | 2350 Dreamer | | $217.00 |
| 71 | 2350 Moon | | $217.00 |
| 72 | 2350 Sahara | | $217.00 |
| 73 | 2351 Crossland | | $217.00 |
| 74 | 2351 Moon | | $65.00 |
| 75 | 2353 Dreamer | | $65.00 |
| 76 | 2353 Elcar | | $217.00 |
| 77 | 2353 Sahara | | $217.00 |
| 78 | 2354 Corsair | | $310.00 |
| 79 | 2354 Crossland | | $217.00 |
| 80 | 2354 Dreamer | | $217.00 |
| 81 | 2354 Moon | | $217.00 |
| 82 | 2354 Sahara | | $65.00 |
| 83 | 2354 Winnabego | | $217.00 |
| 84 | 2355 Crossland | | $217.00 |
| 85 | 2355 Marshfield | | $315.00 |
| 86 | 2357 Dreamer | | $217.00 |
| 87 | 2357 Marshfield | | $300.00 |
| 88 | 2358 Corsair | | $285.00 |
| 89 | 2358 Crossland | | $217.00 |
| 90 | 2358 Dreamer | | $217.00 |
| 91 | 2358 Moon | | $217.00 |
| 92 | 2358 Sahara | | $217.00 |
| 93 | 2359 Crossland | | $217.00 |
| 94 | 2360 Winnebago | | $217.00 |
| 95 | 2361 Marshfield | c | $357.63 |
| 96 | 2366 Winnebago | | $217.00 |
| 97 | 2367 Marshfield | c | |
| 98 | 2373 Marshfield | c | |
| 99 | 2372 Winnebago | | $310.00 |
| 100 | 2378 Winnebago | | $339.41 |
| 101 | 2379 Marshfield | | $285.00 |
| 102 | 2384 Winnebago | | $217.00 |
| 103 | 2385 Marshfield | | $217.00 |
| 104 | 2390 Winnebago | | $217.00 |
| 105 | 2391 Marshfield | | $217.00 |

47

Ex. 9-1

000175

| | | |
|---|---|---|
| 106 | 2396 Winnebago | $217.00 |
| 107 | 2397 Marshfield | $217.00 |
| 108 | 2400 Serro | $217.00 |
| 109 | 2401 Serro | $217.00 |
| 110 | 2402 Winnebago | $217.00 |
| 111 | 2403 Marshfield | $300.00 |
| 112 | 2406 Serro | $325.00 |
| 113 | 2408 Winnebago | $300.00 |
| 114 | 2409 Marshfield | $217.00 |
| 115 | 2411 Serro | $217.00 |
| 116 | 2412 Serro | $217.00 |
| 117 | 2414 Winnebago | $217.00 |
| 118 | 2415 Marshfield | $217.00 |
| 119 | 2418 Serro | $265.96 |
| 120 | 2419 Serro | $217.00 |
| 121 | 2420 Winnebago | $285.00 |
| 122 | 2421 Marshfield | $250.00 |
| 123 | 2424 Serro | $217.00 |
| 124 | 2425 Serro | $217.00 |
| 125 | 2426 Winnebago | $415.09 |
| 126 | 2427 Marshfield | $300.00 |
| 127 | 2430 Serro | $336.17 |
| 128 | 2431 Serro | $217.00 |
| 129 | 2432 Winnebago | $217.00 |
| 130 | 2433 Marshfield | $217.00 |
| 131 | 2436 Serro | $217.00 |
| 132 | 2438 Winnebago | $217.00 |
| 133 | 2439 Marshfield | $307.69 |
| 134 | 2442 Serro | $217.00 |
| 135 | 2443 Serro | $217.00 |
| 136 | 2444 Winnebago | $217.00 |
| 137 | 2445 Marshfield | $217.00 |
| 138 | 2448 Serro | $217.00 |
| 139 | 2454 Serro | $217.00 |
| 140 | 2455 Serro | $217.00 |
| 141 | 2460 Serro | $217.00 |
| 142 | 2466 Serro | $217.00 |
| 143 | 2467 Serro | $217.00 |
| 144 | 2472 Serro | $217.00 |
| 145 | 2475 Serro | $217.00 |
| 146 | 2478 Serro | $277.80 |
| 147 | 2483 Serro | $217.00 |
| 148 | 2484 Serro | $217.00 |
| 149 | 2488 Serro | $217.00 |
| 150 | 2494 Serro | $217.00 |
| 151 | 2500 Serro | $535.00 |

$33,000.10

Ex 9-2

000176

Kim                                    · 12-12-07

        Steven said you
wanted a list of names
concerning who all knew
about putting bed sheets,
curtains, and plastic shower
curtains up to the windows
of the vacant mobile homes.
This process was done to
make the home ~~the~~ look
like someone was living
in it. I myself had to do
this as a worker along
with other employees.

                    Nicole Perdue


See List



Patricia Montgomery
Edger Sullivan
Dieter Birthole
Clearence Montgomery
Jay ford

Ex 10-1

# BORROWERS AFFIDAVIT

STATE OF OHIO
COUNTY OF ___Hamilton___

The Affiant(s) **John B. Hiatt and Kimberly I. Hiatt** being first cautioned and sworn, deposes and says:

1. THAT I am  a) of legal age; b) have legal capacity to act for myself; c) are the owner of the subject property; d) the same person as named in the title deed; and  e) a citizen of the United States.

2. THAT there are no liens or encumbrances (Mortgages, Deeds of Trust, Judgments, Tax Liens, Mechanic's Liens, unpaid Homeowner's or Condominium Association dues or assessments, etc.) known to me/us which are not being paid or properly accounted for in the current transaction.

3. THAT there have been no proceedings in Probate Court, no bankruptcy or divorce proceedings, and that there are no unsatisfied judgments of record nor any actions pending in any Courts, State or Federal, nor any tax liens filed against the above named person(s), except as stated herein.

4. THAT there are no unrecorded deeds, mortgages, contracts, leases, options, easements, or other agreements or interests, relating to the Subject Property, which have not been disclosed to the Lender, Kim R. Knoppe in writing.

5. THAT there are no unpaid taxes, assessments, or services furnished by any Governmental entity which are now a lien against the Subject Property, nor has the undersigned received any notice from any Governmental agency that work is required to be done to the Subject Property which will result in future charges or special assessments.

6. THAT no government authority has notified me of any violations, abatement notices, or condemnations.

7. THAT to my knowledge, there are no disputes with any adjoining property owners or with any other parties or persons as to use or location of any improvements (including fences, driveways, structures, etc.) that there are no improvements on or over any visible easement(s), and that there are no disputes regarding the location of the property lines.

8. THAT the current transaction is not made for the purpose of hindering, delaying or defrauding any creditors of the undersigned.

9. THAT the marital status of the undersigned is:  SINGLE _____   or MARRIED __✗__

10. THAT there are no outstanding Contracts of Sale or other options to purchase the Subject Property other than the Contract which is the subject of the current transaction.

11. THAT the borrower understood the closing charges and interest rate that he is paying for this loan prior to today's closing.

_____      11/22/06      _____  11/22/06
John B. Hiatt                Date          Kimberly I. Hiatt         Date



# MONTGOMERY COUNTY
# REAL ESTATE TAX BILL
# CAROLYN RICE, TREASURER
# DELINQUENT 2006



I39 00701 0014
KNOPPE KIM R
544 ENTERPRISE DR
LEWIS CENTER, OH 43035

**PARCEL IDENTITY**
I39 00701 0014

**TAXING DISTRICT**
RIVERSIDE CITY-MAD R

**PARCEL LOCATION**
2300 2306  VALLEY PIKE

**OWNER NAME**
KNOPPE KIM R

**LEGAL DESCRIPTION**
7-2-30

| | | |
|---|---|---|
| GROSS TAX RATE | 96.0300 | ACRES 1.56 |
| REDUCTION FACTOR | .00000 | CLASS COMMERCIAL |
| EFFECTIVE TAX RATE | 74.64343 | |

**100% APPRAISED VALUE**

| | |
|---|---|
| LAND | 21,840 |
| IMPROVEMENT | 0 |
| TOTAL | 21,840 |

**35% TAXABLE VALUE**

| | |
|---|---|
| LAND | 7,640 |
| IMPROVEMENT | 0 |
| TOTAL | 7,640 |

**HOMESTEAD REDUCTION**

| | |
|---|---|
| LAND | |
| IMPROVEMENT | |
| TOTAL | |

| | | TAX DISTRIBUTION | |
|---|---|---|---|
| CURRENT REAL ESTATE | .00 | | |
| REDUCTION FACTOR | .00 | COUNTY | .00 |
| 10% ROLLBACK | .00 | TOWNSHIP | |
| 2 1/2% ROLLBACK | .00 | CORPORATION | .00 |
| HOMESTEAD REDUCTION | .00 | SCHOOL | .00 |
| CURRENT NET TAXES | .00 | JVS | |
| CURRENT ASSESSMENT | .00 | LIBRARY | .00 |
| SEMIANNUAL PROPERTY CHARGE | .00 | | |
| CURRENT NET TAXES AND ASSESSMENTS | .00 | | |
| DELINQUENT REAL ESTATE | 124,171.42 | | |
| INTEREST REAL ESTATE | | | |
| DELINQUENT ASSESSMENT | | | |
| INTEREST ASSESSMENT | | | |
| PAYMENTS | .00 | | |
| TOTAL AMOUNT DUE | 124,171.42 | | |

PAYMENT WILL AVOID INTEREST CHARGES OF $3315.38

**PAY ON OR BEFORE**

## SEPTEMBER 24, 2007

If you need a stamped receipt, return entire bill with a self addressed stamped envelope. No receipt will be returned unless requested.

YOUR CANCELLED CHECK IS A VALID RECEIPT

-----------------------------------✂-----------------------------------✂-----------

## RETURN THIS PORTION WITH PAYMENT

**DELINQUENT 2006**

MONTGOMERY COUNTY
REAL ESTATE TAX BILL
## CAROLYN RICE, TREASURER
PAY ON OR BEFORE SEPTEMBER 24, 2007

**451 WEST THIRD STREET**
**DAYTON, OHIO  45422-0475**
**(937) 225-4010**

MB

6

| OWNER NAME | KNOPPE KIM R |
|---|---|
| PARCEL LOCATION | 2300 2306  VALLEY PIKE |

I39 00701 0014
KNOPPE KIM R
544 ENTERPRISE DR
LEWIS CENTER, OH 43035

PARCEL IDENTITY:  I39 00701 0014

**MAKE CHECKS PAYABLE TO:**
CAROLYN RICE, TREASURER

6

PAYMENT AMOUNT

124,171.42



ПППППППППП  П1.Ж41.Ж1.ЖЖЬ  ПППП9Ж9ПП7П1.ПППП1.ЧЬ  1.Ж1.

# Premier Mortgage Funding, Inc.

260 Northland Blvd Ste 103B
Cincinnati, Oh 45246

Office Phone - 866-867-0112

Fax Number - 866-867-0112

Email - robertstoetzel@yahoo.com

## Fax Transmittal Form

To:
Name: *Kim Knoppe*
CC:
Phone:
Fax:

From: *Rob S.*
Date Sent:

Number of Pages:

## Message:

1. Need ( NET $150,000.⁰⁰ ) HARD MONEY
2. FOR 60 DAYS w/ 30 Day Extension AVAILABLE. TO 90 DAYS.

*Thanks,*
*Rob*

